UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

MCKINLEY PIERCE ATKINS,

Plaintiff,

v.

E. RIOS, et al.,

Defendants.

Case No. 1:20-cv-00193-ADA-BAK (GSA)  (PC)

**FINDINGS AND RECOMMENDATIONS TO GRANT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT FOR PLAINTIFF'S FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES**

**14-DAY OBJECTION DEADLINE**

Plaintiff McKinley Pierce Atkins is proceeding *pro se* and *in forma pauperis* in this civil rights action brought pursuant to 42 U.S.C. § 1983.

## I.       RELEVANT PROCEDURAL BACKGROUND

Plaintiff initiated this action by filing his complaint on February 6, 2020. (Doc. 1.)

In a screening order issued June 8, 2020, the Court found Plaintiff had failed to state a claim upon which relief could be granted. (Doc. 9.) Plaintiff was granted 21 days within which to amend his complaint curing the deficiencies identified in the screening order. (*Id*. at 7.)

On September 8, 2020, this Court issued an Order to Show Cause (OSC) why the action should not be dismissed for Plaintiff's failure to comply with a court order—to file a first amended complaint. (Doc. 12.) Plaintiff filed a response on September 18, 2020 (Doc. 13); the Court discharged the OSC and afforded Plaintiff additional time within which to file his amended

1    complaint. (Doc. 14.) Plaintiff received two additional extensions of time (Docs. 16 & 18), but
2    failed to file a first amended complaint within the time afforded him.

3         On March 18, 2021, then Magistrate Judge Jennifer L. Thurston issued Findings and
4    Recommendations to Dismiss Action for Failure to Obey Court Orders and Failure to State a
5    Claim. (Doc. 20.) Plaintiff was given 14 days within which to file objections. (*Id.* at 2.)

6         On April 16, 2021, Plaintiff filed a first amended complaint and objections to the findings
7    and recommendations. (Docs. 21 & 22.) Consequently, on April 21, 2021, the findings and
8    recommendations were withdrawn. (Doc. 23.)

9         On June 11, 2021, then Magistrate Judge Thurston issued a second screening order,
10   finding Plaintiff had stated cognizable deliberate indifference claims against Defendants Rios and
11   De Lussa, but had failed to state any other cognizable claim. (Doc. 24.) Plaintiff was directed to
12   file a second amended complaint curing the deficiencies identified in the order, or, alternatively,
13   to notify the Court that he wished to proceed only on the cognizable claims; Plaintiff was
14   afforded 21 days within which to comply with the Court's order. (*Id.* at 7.)

15        On July 1, 2021, Plaintiff filed a notice indicating he wished to proceed on the deliberate
16   indifference claims against Defendants Rios and De Lussa. (Doc. 25.)

17        On July 6, 2021, service documents issued. (Docs. 26 & 27.) That same date, then
18   Magistrate Judge Thurston issued findings and recommendations to dismiss named defendant
19   Rocha and the non-cognizable claims presented in Plaintiff's first amended complaint, noting the
20   action would proceed only on the deliberate indifference to serious medical needs claims against
21   Defendants Rios and De Lussa. (Doc. 28.)

22        On August 24, 2021, District Judge Dale A. Drozd issued an Order adopting the findings
23   and recommendations. (Doc. 30.)

24        On October 12, 2021, Defendants De Lussa and Rios filed an answer to Plaintiff's first
25   amended complaint. (Doc. 32.)

26        When early settlement conference efforts were unsuccessful (*see* Doc. 40 [minutes]), the
27   Court issued its Discovery and Scheduling Order on February 7, 2022. (Doc. 46.)

28   //

2

On February 23, 2022, Defendants filed a motion for summary judgment re exhaustion. (Doc. 47.) On March 23, 2022, Plaintiff filed an opposition to the motion. (Doc. 48.) On April 6, 2022, Defendants replied to Plaintiff's opposition (Doc. 49) and filed a response to Plaintiff's statement of undisputed facts and separate statement of disputed material facts (Doc. 50).

On August 24, 2022, this action was reassigned from District Judge Dale A. Drozd to District Judge Ana de Alba for all further proceedings. (Doc. 51.)

## II.       SUMMARY OF FACTS

### *Plaintiff's Allegations*

Plaintiff suffers from a "seizure disorder" and back pain due to a car accident and a slip-in-fall in 2011. (Doc. 22 at 3.) On December 24, 2015, while incarcerated at California State Prison, Corcoran, Plaintiff was assigned to work as a "recycling porter." (*Id.*) After a month on this assignment, "Plaintiff felt he was struggling to do the work and wouldn't be able to continue because [he] was having serious pains in his back and neck." (*Id.*) Plaintiff informed his supervisor, Correctional Officer Rocha, and requested a job change, but Rocha denied his request. (*Id.*) A few weeks later, Plaintiff again requested a job change, informing Rocha that he had a "li[ght] duty chrono." (*Id.* at 3-4.) Rocha informed Plaintiff that he would "have to bring him his medical records that state[ ] he ha[s] medical limitations and if plaintiff had such, the assignment department wouldn't ha[ve] given him this assignment." (*Id.* at 4.) Plaintiff continued to work the same assignment. (*Id.*)

On March 30, 2016, Plaintiff attempted to open the lid of a large trash container when the "lid slam[m]ed back down on [his] shoulder and neck area," severely injuring him. (*Id.* at 5.) Plaintiff "could barely move," but Correctional Officer De Lussa did not allow him to seek medical attention until after his shift. (*Id.*) De Lussa's refusal to allow Plaintiff to obtain immediate medical attention caused him further injury and unnecessary pain. (*Id.*)

On April 3, 2016, Plaintiff informed Correctional Officer Rios about his injuries and stated that he could not work because of "tremendous pain in his shoulder, back and neck area." (*Id.* at 6.) Rios replied that she knew of Plaintiff's accident, but that he had to "work anyway until further notice . . .  ignor[ing] his injury and severe pain[ ]." (*Id.*) Plaintiff continued to work

3

1    through April 4, 2016. (*Id.*) He was then transferred to Substance Abuse Treatment Facility and

2    State Prison, Corcoran, on April 5, 2016, at which time a doctor examined him and "determined

3    that [he] had very serious injuries to his rotator cuff" and spine. (*Id.*) Plaintiff underwent surgery

4    in 2017. (*Id.* at 7.)

5                                    **A. Defendants' Undisputed Facts**

6              Defendants submitted the following as undisputed facts:

7                    1. Plaintiff McKinley Pierce Atkins (Plaintiff) is a prisoner in the
                     custody of the California Department of Corrections and
8                    Rehabilitation (CDCR). Doc. No. 5 at 1. [Fn. Omitted.]

9                    2. Plaintiff was incarcerated at California State Prison, Corcoran
                     (CSP-COR) during the period encompassing December 24, 2015 to
10                   April 5, 2016. Doc. No. 22 at 1, 3-6.

11                   3. Defendants were employed by CDCR at CSP-COR as
                     Correctional Officers at all times relevant to this lawsuit. Doc. No.
12                   32 at 1-2.

13                   4. Plaintiff was employed as a recycling porter at CSP-COR from
                     December 24, 2015 to April 5, 2016. Doc. No. 32 at 2.
14

15                   5. Plaintiff initiated this civil rights action on February 24, 2020.
                     Doc. No. 1.

16                   6. CDCR provides its inmates with a comprehensive regulatory
                     administrative process through which inmates may appeal a decision,
17                   action, condition, policy, or omission made by the department or its
                     staff, which the inmate can demonstrate as having a material adverse
18                   effect on his or her welfare. Mendez Decl. ¶ 7.

19                   7. If filing a grievance before June 1, 2020, an inmate was required
                     to follow the procedures set forth in California Code of Regulations,
20                   title 15, sections 3084-3085 (repealed effective June 1, 2020).
                     Moseley Decl. ¶ 6.
21

22                   8. Between March 30, 2016 and April 16, 2021, Plaintiff submitted
                     one grievance, Log No. CSPC-8-18-02892, relating to his claims in
23                   this action. Moseley Decl. ¶ 8; Mendez Decl. ¶ 9.

24                   9. Plaintiff submitted the grievance over two years after the events in
                     question allegedly occurred; the appeals coordinator at CSP-COR
25                   received the grievance on June 1, 2018. Mendez Decl. ¶ 9, Ex. C.

26                   10. On August 6, 2018, Plaintiff received notice that his grievance
                     had been screened at the first level of review and cancelled for failure
27                   to comply with the regulatory requirement to file a timely grievance.
                     Mendez Decl., Ex C.
28

4

11. Plaintiff appealed the cancellation of his grievance to the second level of review; the warden of CSP-COR received Plaintiff's appeal, Log No. CSPC-8-18-04403, on August 29, 2018. Mendez Decl. ¶ 9, Ex. B.

12. On September 13, 2018, the warden issued a second-level appeal response concluding that Plaintiff's grievance, Log No. CSPC-8-18-02892, had been properly cancelled as untimely, noting that Plaintiff did not have a disability that would have caused a delay in filing, and indicating that Plaintiff had also failed to submit any documentation evidencing that he was unable to file in a timely manner. Mendez Decl., Ex. B.

13. Plaintiff appealed, Appeal Log No. 1816776, to the third level of review on December 19, 2018, over three months after the warden issued the second-level appeal response. Moseley Decl. ¶ 9.

14. On January 31, 2019, the Office of Appeals cancelled Plaintiff's third-level appeal as untimely. Moseley Decl. ¶ 9, Ex. 3.

15. On March 27, 2019, the Office of Appeals received another appeal submitted by Plaintiff, Appeal Log No. 1902014, in which Plaintiff alleged that Appeal Log No. 1816776 was inappropriately cancelled. Mosely Decl. ¶ 11.

16. On June 25, 2019, the Office of Appeals issued a third-level response denying Plaintiff's appeal. Mosely Decl. ¶ 11, Ex. 4.

(Doc. 47-2.) Plaintiff agrees that Defendants' numbers 1 through 7, 10 through 11, and 13 through 16 are undisputed.  (Doc. 48 at 2.) However, Plaintiff denies that Defendants' numbers 8, 9, and 12 are undisputed. (*Id.*) Nevertheless, Plaintiff has not identified any evidence to dispute Defendants' assertions.

## B.  Plaintiff's Undisputed Facts

Plaintiff has also submitted a statement of undisputed facts. He provides the following:

1.  Plaintiff initiated a grievance on approximately March 3, 2016 via appeal box in his building.

2.  Plaintiff made an inquiry into his said grievance approximately 30 days after he initially submitted said grievance, but never received a response.

3.  In all of Plaintiff's grievances after his first grievance on approximately March 3, 2016, he implied or stated that he submitted a grievance the next day after is injury.

4.  Plaintiff compl[ied] with the requirements of the PLRA before filing this lawsuit, but Corcoran State Prison Appeals Office failed to respond.

5

1       5.  Plaintiff submitted his first grievance on approximately March 3,
2           2016, in regards to his injury on his assigned job.

     6.  Plaintiff never received a response to his grievance he submitted
3           on approximately March 3, 2016, in regards to his injury on his
4           assigned job.

     7.  CDCR grievance process was not unavailable to Plaintiff because
5           they failed to response to Plaintiff grievance.

6  (Doc. 48 at 7-8.)  Defendants have responded to all proffered facts alleging they are not supported

7  by any citation to evidence (citing Local Rule 230(b)), and are thus insufficient to create a triable

8  issue of material facts that would preclude summary judgment in their favor (citing Fed. R. Civ.

9  P. 56(c)). (Doc. 50 at 1-3.) As to proffered fact numbers 1 through 3, and 5 through 7, Defendants

10  allege those facts are neither relevant or material to their motion for summary judgment "as it

11  concerns a grievance filed approximately 27 days prior to [Plaintiff's] purported workplace injury

12  and the events giving rise to this action" (citing Fed. R. Evid. 401). (*Id.*) Additionally, as to

13  number 4, Defendants contend Plaintiff's proffered fact is an improper legal conclusion. (*Id.*)

14                    **C.  Plaintiff's Separate Statement of Disputed Facts**

15        Plaintiff has submitted a separate statement of disputed material facts in opposition to

16  Defendants' motion:

17       1.  Between March 30, 2016 and April 16, 2021, Plaintiff submitted
         numerous grievances relating to this claim in this action. Decl.
18           Plaintiff ¶2.

19       2.  Plaintiff submitted a grievance the next day after he was injured
         on his assigned job, he never receive a response. Decl. Plaintiff
20           ¶3.

21       3.  Plaintiff stated/implied in all his grievances that he never
         received a response on that grievance he submitted the next day.
22           Decl. Plaintiff ¶4.

23  (Doc. 48 at 11.) Defendants respond as follows:

24       1.  Defendants do not dispute that Plaintiff has submitted inmate
         grievance Log Nos. CSPC-8-18-02892, CSPC-8-18-04403,
25           CSPC-8-18-02892, and 1816776 between March 30, 2016 and
         April 16, 2021.
26

27       2.  The proffered fact is supported by a sham affidavit. As such, it is
         insufficient to create a triable issue of material fact that would
         preclude summary judgment in favor of Defendants. Fed. R. Civ.
28           P. 56(c).

1

3. The proffered fact is supported by a sham affidavit and plainly contradicted by the documentary evidence in the record. As such, it is insufficient to create a triable issue of material fact that would preclude summary judgment in favor of Defendants. Fed. R. Civ. P. 56(c).

(Doc. 50 at 3-4.)

## III.   LEGAL STANDARDS

### A.  Summary Judgment

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party "initially bears the burden of proving the absence of a genuine issue of material fact." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations …, admissions, interrogatory answers, or other materials," or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B). When the non-moving party bears the burden of proof at trial, "the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *Oracle Corp.*, 627 F.3d at 387 (citing *Celotex*, 477 U.S. at 325); *see also* Fed. R. Civ. P. 56(c)(1)(B).

Summary judgment should be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322–23. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment … is satisfied." *Id.* at 323.

//

//

7

### B. Exhaustion of Administrative Remedies

The Prison Litigation Reform Act (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion of administrative remedies is mandatory and "unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). Inmates are required to "complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006). The exhaustion requirement applies to all inmate suits relating to prison life, *Porter v. Nussle*, 534 U.S. 516, 532 (2002), regardless of the relief sought by the prisoner or offered by the administrative process, *Booth v. Churner*, 532 U.S. 731, 741 (2001).

The failure to exhaust administrative remedies is an affirmative defense, which the defendant must plead and prove. *Jones*, 549 U.S. at 204, 216. The defendant bears the burden of producing evidence that proves a failure to exhaust; and, summary judgment is appropriate only if the undisputed evidence, viewed in the light most favorable to the plaintiff, shows the plaintiff failed to exhaust. *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014). On a motion for summary judgment, the defendant must prove (1) the existence of an available administrative remedy and (2) that the plaintiff failed to exhaust that remedy. *Id.* at 1172 (citation omitted). If the defendant meets this burden, the plaintiff then "has the burden of production. That is, the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.* (citation omitted). "However, … the ultimate burden of proof remains with the defendant." *Id.* "If a motion for summary judgment is denied, disputed factual questions relevant to exhaustion should be decided by the judge." *Id.* at 1170.

An inmate "need not exhaust unavailable [remedies]." *Ross v. Blake*, 578 U.S. 632, 642 (2016). An administrative remedy is unavailable "when (despite what regulations or guidance materials may promise) it operates as a simple dead end with officers unable or consistently

1    unwilling to provide any relief to aggrieved inmates"; or when "an administrative scheme [is] so

2    opaque that it becomes, practically speaking, incapable of use, [i.e.,] some mechanism exists to

3    provide relief, but no ordinary prisoner can discern or navigate [the mechanism]"; or "when

4    prison administrators thwart inmates from taking advantage of a grievance process through

5    machination, misrepresentation, or intimidation." *Id*. at 643-44.

6         Prisoners are required to exhaust the available administrative remedies prior to filing suit.

7    *Jones v. Bock*, 549 U.S. at 211; *McKinney v. Carey*, 311 F.3d 1198, 1199-1201 (9th Cir. 2002).

8    However, a prisoner who has fully complied with the PLRA's exhaustion requirement need not

9    file an entirely new federal case simply because they had not exhausted when they filed their

10   original federal complaint. *Jackson v. Fong*, 870 F.3d 928 (9th Cir. 2017); accord *Saddozai v.*

11   *Davis*, ––– F.4th ––––, 2022 WL 1613616 (9th Cir. May 23, 2022.)

12        When the district court concludes that the prisoner has not exhausted administrative

13   remedies on a claim, "the proper remedy is dismissal of the claim without prejudice." *Wyatt v.*

14   *Terhune*, 315 F.3d 1108, 1120 (9th Cir. 2003) (citation omitted), *overruled on other grounds* by

15   *Albino*, 747 F.3d at 1168-69. "If a motion for summary judgment is denied, disputed factual

16   questions relevant to exhaustion should be decided by the judge." *Albino*, 747 F.3d at 1170. If the

17   court finds that remedies were not available, the prisoner exhausted available remedies, or the

18   failure to exhaust available remedies should be excused, the case proceeds to the merits. *Id*. at

19   1171.

20                              **C.  CDCR Grievance Process**

21        The CDCR has an administrative grievance system for prisoners to appeal a policy,

22   decision, action, condition, or omission by the department or staff if it has an adverse effect on

23   prisoner health, safety, or welfare. Cal. Code Regs. tit. 15, § 3084.1(a) (2017). Compliance with

24   42 U.S.C. § 1997e(a) requires California state prisoners to utilize CDCR's grievance process to

25   exhaust their claims prior to bringing suit in court. *See Sapp v. Kimbrell*, 623 F.3d 813, 818 (9th

26   Cir. 2010); *see also Woodford*, 548 U.S. at 85-86. In 2016, administrative grievances were subject

27   to three levels of review before the remedy was deemed exhausted. Cal. Code Regs. tit. 15, §

28   3084.1(b) (2017); *see also Sapp*, 623 F.3d at 818.

## IV.    SUMMARY OF ARGUMENTS

### A.  Defendants' Motion for Summary Judgment

Defendants contend Plaintiff failed to exhaust his administrative remedies prior to filing suit because he submitted a grievance more than two years after the alleged constitutional violations. (Doc. 47-1 at 5.) More particularly, Plaintiff was required to submit a grievance within 30 days after the event giving rise to the constitutional violation, or within 30 days after March 30 through April 6, 2016. (*Id.* at 10.) However, Defendants contend Plaintiff did not submit any grievance by May 6, 2016; rather, his grievance was received by the Office of Appeals on June 1, 2018, more than two years later. (*Id.*) The 2018 grievance was lacking support for any cause of delay and Plaintiff failed to submit documentation supporting an inability to file in a timely manner. (*Id.* at 10-11.) Further, Defendants contend Plaintiff failed to properly exhaust his administrative remedies because he did not timely appeal the cancellation of his original grievance. (*Id.* at 11.) Plaintiff was notified on August 6, 2018 that his 2018 grievance had been screened at the first level of review and cancelled for a failure to comply with regulatory requirements. (*Id.*) At the second level of review, the warden concluded the grievance was properly cancelled as untimely and that Plaintiff had no valid reason to excuse the delay. (*Id.*) More than three months later, on December 19, 2018, Plaintiff appealed to the third level. (*Id.*) The Office of Appeals cancelled Plaintiff's third level appeal as untimely on January 31, 2019, and a separate appeal from the cancellation decision was also unsuccessful. (*Id.* at 11-12.) Defendants contend they were entitled to a full and fair opportunity to adjudicate Plaintiff's claims; however, Plaintiff's "late-filed grievance" precluded the opportunity and a procedurally defective grievance cannot satisfy the exhaustion requirement, therefore entitling Defendants to summary judgment. (*Id.* at 12.)

### B.  Plaintiff's Opposition

Plaintiff begins by contending Defendants' motion must be denied because "disputed facts prove that Defendants was deliberately indifferent to Plaintiff's serious medical needs …, there is a genuine issue for trial and Defendants is not entitled to qualified immunity." (Doc. 48 at 1-2.) Plaintiff contends "in all his appeals, [he] informed staff(s) that he submitted an appeal on

10

1   approximately March 3, 2016 … but never received a response." (*Id*. at 3.) Plaintiff submitted

2   "Plaintiff's Statement of Undisputed Facts" (*id*. at 7-8) and the "Declaration of Plaintiff" (*id*. at 9-

3   10) in support of his opposition. Plaintiff also submitted "Plaintiff's Separate Statement of

4   Disputed Material Facts" in support of his opposition. (*Id*. at 11.) Essentially Plaintiff declares he

5   did file a grievance within 30 days of the incident giving rise to the constitutional violations of

6   which he now complains.

7                                          **C.   Defendants' Reply & Response**

8             In their reply to Plaintiff's opposition, Defendants ask the Court to sustain objections to

9   paragraphs 3 through 6 of Plaintiff's supporting declaration as contradicting facts set forth in

10  Plaintiff's verified first amended complaint. (Doc. 49 at 2.) Specifically, Defendants contend

11  Plaintiff's amended complaint alleged administrative remedies were available, that he submitted a

12  request regarding his claims against Defendants, and that he appealed it to the highest level,

13  whereas in his supporting declaration Plaintiff "now declares that he 'submitted a grievance the

14  next day after he was injured on his assigned job, [but] he never received a response.'" (*Id*.)

15  Defendants assert the statements in the declaration "directly contradict" those in his amended

16  complaint because neither availability nor review at the highest level are possible if prison

17  officials failed to respond or take action on the grievance. (*Id*.) Defendants argue these portions of

18  Plaintiff's declaration are a "'sham,' intended to 'create an issue of fact and avoid summary

19  judgment.'" (*Id*.) Defendants also object to paragraph 5 in Plaintiff's declaration, wherein

20  Plaintiff states "'a material issue of fact exists as to whether he attempted to exhaust his

21  administrative remedies," as an improper legal conclusion. (*Id*. at 3.) Next, Defendants argue they

22  have established that Plaintiff has failed to exhaust his administrative remedies, noting Plaintiff's

23  critical failure to include evidentiary support for his denial that he submitted only one grievance

24  over two years after the events in question. (*Id*. at 3-4.) Defendants also contend Plaintiff failed to

25  meet his burden of production where "he fails to specify 'who he submitted this inmate appeal to,

26  when he submitted it, what details the inmate appeal contained, or any of the other circumstances

27  surrounding his alleged submission of such an inmate appeal,' and therefore his 'conclusory and

28  unsupported declaration and contentions are insufficient.'" (*Id*. at 4-5.)

In their separately filed response to Plaintiff's statement of undisputed facts and separate statement of disputed material facts, Defendants respond that all proffered facts in Plaintiff's statement of undisputed facts are not supported by any citation to evidence (citing Local Rule 230(b)), and are thus insufficient to create a triable issue of material facts that would preclude summary judgment in their favor (citing Fed. R. Civ. P. 56(c)). (Doc. 50 at 1-3.) As to proffered fact numbers 1 through 3, and 5 through 7, Defendants allege those facts are neither relevant or material to their motion for summary judgment "as it concerns a grievance filed approximately 27 days prior to [Plaintiff's] purported workplace injury and the events giving rise to this action" (citing Fed. R. Evid. 401). (*Id.*) Additionally, as to number 4, Defendants contend Plaintiff's proffered fact is an improper legal conclusion. (*Id.* at 2.) Regarding Plaintiff's separate statement of disputed material facts, Defendants do not dispute that Plaintiff submitted "inmate grievance Log Nos. CSPC-8-18-02892, CSPC-8-18-04403, CSPC-8-18-02892, and 1816776 between March 30, 2016 and April 16, 2021. (*Id.* at 3.) Defendants respond that Plaintiff's proffered fact that he submitted a grievance the day after his injury and never received a response is a sham affidavit insufficient to create a triable issue of material fact precluding summary judgment. (*Id.* at 3.) Finally, as for Plaintiff's statement that he "stated/implied in all his grievances that he never received a response on that grievance he submitted the next day," Defendants respond the proffered fact is supported by a sham affidavit and is contradictory to other documentary evidence and is thus insufficient to create a triable issue of material fact precluding summary judgment. (*Id.* at 3-4.)

## V.   DISCUSSION

Plaintiff does not dispute the existence of an administrative remedy at California State Prison, Corcoran. The California Department of Corrections and Rehabilitation has an administrative grievance system for prisoners to appeal "any policy, decision, action, condition, or omission by the department or its staff" that has a material adverse effect on the health, safety, or welfare of inmates. Cal. Code Regs. tit. 15, § 3084.1(a) (2018) (repealed June 1, 2020. (Doc. 47-2, ¶ 6.) Inmates must follow the procedures outlined in California Code of Regulations, Title 15, sections 3084.1 through 3085, by describing the problem and the action requested in the

1   appeal form. (Doc. 47-2, ¶ 7.)

2       Defendants contend Plaintiff submitted one grievance—Log No. CSPC-8-18-02892—

3   between March 30, 2016 and April 16, 2021, relating to the claim in this action. (Doc 47-2, ¶ 8.)

4   That grievance was received by the appeals coordinator at the institution on June 1, 2018. (*Id.*, at

5   ¶ 9.) In other words, there is no record of a grievance from March or April 2016. This assertion is

6   supported by declarations and documentary evidence. (Docs. 47-3 [Mendez Decl. & exhibits] &

7   47-4 [Moseley Decl. & exhibits].)

8       The Court finds that Defendants have carried their initial burden to prove that there was an

9   available administrative remedy and that Plaintiff failed to exhaust that remedy. *Albino v. Baca*,

10  747 F.3d at 1172. As such, the burden shifts to Plaintiff to come forward with evidence showing

11  that he did exhaust the available remedies for his claims against Defendants, or that there is

12  something in his particular case that made the existing and generally available administrative

13  remedies effectively unavailable to him. *Williams v. Paramo*, 775 F.3d at 1191.

14      Here, Plaintiff attempts to show that there is something in his case that made existing and

15  generally available administrative remedies unavailable to him by contending he did submit a

16  grievance "on approximately March 3, 2016" but never received a response, and that a lack of

17  response equals exhaustion. (Doc. 48 at 3.) Plaintiff has offered no exhibits or evidence—other

18  than his own declaration—to support his assertion that he submitted a grievance in March or early

19  April 2016 following his injury. For example, Plaintiff has not provided this Court with a copy of

20  the grievance he allegedly submitted in March or April of 2016, nor any evidence of his attempts

21  to follow up on that grievance. Plaintiff's declaration is discussed further below.

22      Plaintiff cites to several cases in support of his assertion that administrative remedies were

23  unavailable, however, those cases are procedurally distinct and therefore unhelpful. For example,

24  *Taylor v. Bennett*, 105 F.Supp.2d 483 (E.D. Va. 2000) does not assist Plaintiff because there the

25  court was faced with a motion to dismiss requiring it to address the merits of the plaintiff's Eighth

26  Amendment claim; it presumed for that purpose that the plaintiff's "several grievances" "placed

27  in limbo" were administratively exhausted. (*Id.* at 486.) It was not determining whether the

28  plaintiff had in fact exhausted his administrative remedies, rather is assumed that to be the case.

1    In *Martin v. McFadden*, No. 0:15-1570-PMD-PJG, 2016 WL 3727493, *3 (D.S.C. June 17,

2    2016), also cited by Plaintiff, the question presented was not whether grievances were submitted

3    in the first instance, but whether the pending grievances and the fact the plaintiff had not received

4    a decision when he filed his verified complaint made administrative remedies unavailable to that

5    plaintiff. Similarly, in *Boston v. Padula*, No. 9:07-0950-PMD-GCK, 2007 WL 5387623, *4

6    (D.S.C. Oct. 9, 2007), the issue was not whether the plaintiff submitted a grievance; in fact the

7    defendants in that case provided the grievance as an exhibit to their motion. The court determined

8    the administrative remedy was unavailable to plaintiff where the grievance was not "processed,

9    acted upon, or even returned" to the plaintiff after he filed "a proper grievance form."

10          In this case, unlike the cases upon which Plaintiff relies, the first question to be answered

11   is whether Plaintiff submitted a grievance as he alleges in March or April 2016. Plaintiff has

12   submitted a declaration under penalty of perjury wherein he declares he "submitted a grievance

13   the next day after he was injured on his assigned job, he never received a response." (Doc. 48 at

14   9, ¶ 3.) Plaintiff further declares "he attempted to exhaust his administrative remedies, but 'due to

15   some inadvertent loss of the grievance form, or for some other reason,' prison officials took no

16   action with respect to the grievance." (*Id*. at ¶ 5.) Plaintiff also declares "he inquired as to the lack

17   of response to his appeal 30 days after he submitted his first grievance on approximately March 3,

18   2016, but again received no response." (*Id*. at ¶ 6.)

19                    **A.  Sham Affidavit: Plaintiff's Declaration & Separate Statement**

20          As noted above, Defendants contend Plaintiff's declaration, alleging he submitted a

21   grievance in March or April of 2016 but never received a response, is a sham declaration or

22   affidavit intended to create a triable issue of material fact to avoid summary judgment. They

23   similarly contend those same assertions made in Plaintiff's separate statement of disputed facts

24   amount to a sham affidavit.

25          Under the "sham affidavit" rule, "a party cannot create an issue of fact by an affidavit

26   contradicting his prior deposition testimony." *Kennedy v. Allied Mutual Ins. Co.*, 952 F.2d 262,

27   266 (9th Cir. 1991). The Ninth Circuit explained, "if a party who has been examined at length on

28   deposition could raise an issue of fact simply by submitting an affidavit contradicting his own

1   prior testimony, this would greatly diminish the utility of summary judgment as a procedure for

2   screening out sham issues of fact." *Id*. Because of the jury's role in resolving questions of

3   credibility, courts have urged caution when applying the sham affidavit rule. *Id*. (citing *Kennett-*

4   *Murray Corp. v. Bone*, 622 F.2d 887, 894 (5th Cir. 1980)); *see also Yeager v. Bowlin*, 693 F.3d

5   1076, 1080 (9th Cir. 2012) (explaining the sham affidavit rule has limited application "because it

6   is in tension with the principle that the court is not to make credibility determinations when

7   granting or denying summary judgment").

8          To determine whether a declaration should be stricken as a sham, the Ninth Circuit

9   requires the court to "make a factual determination that the contradiction was actually a 'sham,'"

10   and created specifically to avoid summary judgment. *Van Asdale v. Int'l Game Tech*., 577 F.3d

11   989, 998 (9th Cir. 2009). In addition, "the inconsistency between a party's deposition testimony

12   and subsequent affidavit must be clear and unambiguous to justify striking the affidavit." *Id.* at

13   998-99. The Court explained that "minor conflicts between [a declarant's] earlier deposition

14   testimony and subsequent declaration ... do not justify invocation of the sham affidavit rule." *Id*.

15   at 999.

16          First, the undersigned notes it is unclear whether the sham affidavit rule should even apply

17   here. Defendants do not point to any discrepancy between Plaintiff's declaration and Plaintiff's

18   *deposition testimony* (*Kennedy*, 952 F.2d at 266 ["a party cannot create an issue of fact by an

19   affidavit contradicting his prior deposition testimony"]); rather Defendants point to discrepancies

20   between the assertions made in Plaintiff's complaint concerning his exhaustion efforts and the

21   statements made in Plaintiff's declaration in opposition to their motion for summary judgment

22   regarding those same efforts, or in Plaintiff's separate statement of disputed material facts.

23          Assuming for the sake of discussion that the sham affidavit rule does apply, the Court is

24   unpersuaded by Defendants' argument. In his first amended complaint, Plaintiff indicated there

25   were administrative remedies available at his institution, that he submitted requests for his claims,

26   and that he appealed to the highest level. (Doc. 22 at 3, 5 & 6.) In his declaration and separate

27   statement, Plaintiff declares and/or states that he submitted a grievance the day following his

28   injury and never received a response.  While these differences may be viewed as inconsistent, the

15

1   undersigned does not find them to be so "clear and unambiguous [so as] to justify striking the

2   affidavit." It may be that Plaintiff's answers to the exhaustion questions in his first amended

3   complaint were offered in conformity with Plaintiff's later-explained belief that the lack of

4   response to the grievance Plaintiff alleges he submitted in late March or early April 2016

5   amounted to an unavailable remedy, one which Plaintiff alleges amounts to exhaustion.[1] In other

6   words, these inconsistencies may not be an actual sham, but Plaintiff's effort to elaborate or

7   clarify the statements made in the first amended complaint. *Van Asdale*, 577 F.3d at 998-99;

8   *Nelson v. City of Davis*, 571 F.3d 924, 928 (9th Cir. 2009) (the sham affidavit rule does not apply

9   to affidavits which elaborate, explain, or clarify the prior testimony in deposition). Because the

10   Court is not to make credibility determinations when granting or denying summary judgment and,

11   employing the caution the Ninth Circuit has called for regarding sham affidavit rule, the

12   undersigned recommends it not be applied in this circumstance. *Yeager v. Bowlin*, 693 F.3d at

13   1081.

### B. Improper Legal Conclusion

15       In addition to the aforementioned evidentiary objection based upon the sham affidavit

16   rule, Defendants object to Plaintiff's declaration at paragraph 5 as an improper legal conclusion.

17   (Doc. 49 at 3.) Specifically, paragraph 5 of Plaintiff's declaration states: "Plaintiff states a

18   material issue of fact exists as to whether he attempted to exhaust his administrative remedies, but

19   'due to some inadvertent loss of the grievance form, or for some other reason,' prison officials

20   took no action with respect to the grievance." (Doc. 48 at 10.)

21       "[O]bjections to evidence on the ground that it is irrelevant, speculative, and/or

22   argumentative, or that it constitutes an improper legal conclusion are all duplicative of the

23   summary judgment standard itself" and thus need not be considered on a motion for summary

24   judgment. *Burch v. Regents of Univ. of Cal.*, 433 F.Supp.2d 1110, 1120 (E.D. Cal. 2006).

25   "[I]mproper legal conclusions ... are not facts." *Id*. at 1119. As such, legal conclusions "will not

26   be considered on a motion for summary judgment." *Id*. Therefore, Defendants' objection should

---

[1] *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir.2010) (district courts were cautioned to "construe liberally motion papers and pleadings filed by pro se inmates and ... avoid applying summary judgment rules strictly").

1    be sustained for Plaintiff's statement is plainly an improper legal conclusion.

2                      **C.  Relevancy & Materiality Objections**

3           Defendants contend Plaintiff's proffered fact numbers 1 through 3, and 5 through 7, are

4    neither relevant or material to their motion for summary judgment "as it concerns a grievance

5    filed approximately 27 days prior to [Plaintiff's] purported workplace injury and the events giving

6    rise to this action," noting Plaintiff's use of the date March 3, 2016. (Doc. 50 at 1-3.)

7           While "objections to evidence on the ground that it is irrelevant, speculative, and/or

8    argumentative, or that it constitutes an improper legal conclusion are all duplicative of the

9    summary judgment standard itself" and thus need not be considered on a motion for summary

10   judgment (*Burch v. Regents of Univ. of Cal.*, 433 F.Supp.2d at 1120), the undersigned notes

11   Plaintiff's use of the date "March 3, 2016" may also be reasonably viewed as a typographical

12   error. Certainly if March 3, 2016 were in fact the date Plaintiff intended to recite in his

13   opposition, Defendants are correct to state that date occurred "27 days prior" to the date of

14   Plaintiff's injury. However, other than the use of "March 3, 2016" in portions of Plaintiff's

15   opposition to Defendants' summary judgment motion (*see* Doc. 48 at 3, 7), that date is not used

16   exclusively. Nor does it appear in Plaintiff's amended complaint. Plaintiff's declaration

17   references "March 30, 2016" as well as "March 3, 2016." (*See* Doc. 48 at 9-10.) Plaintiff's

18   separate statement of disputed material facts references only "March 30, 2016." (Doc. 48 at 11.)

19                             **D.  Merits Discussion**

20                               **1.  2016 Grievance**

21          As noted above, the question before this Court is whether the administrative remedy was

22   available to Plaintiff because Plaintiff alleges he submitted a grievance the day after his injury but

23   never received a response. A district court may excuse a prisoner from complying with the

24   exhaustion requirement when prison officials render administrative remedies effectively

25   unavailable even if prison officials did not act in bad faith in doing so. *See Sapp*, 623 F.3d at 822;

26   *Nunez*, 591 F.3d at 1224. Plaintiff has the burden to demonstrate unavailability.

27          In *Draper v. Rosario*, 836 F.3d 1072 (9th Cir. 2016), the Ninth Circuit considered

28   Draper's argument that the administrative remedy was unavailable to him and, therefore, the

district court improperly granted summary judgment to defendants:

> The district court properly concluded that Draper's unsupported allegations were insufficient to create a triable issue of material fact. To meet his burden of production, Draper's verified complaint and pro se opposition needed to include evidence that there was "something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino*, 747 F.3d at 1172. Although pro se pleadings must be construed liberally, *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002), the district court did not err in concluding that Draper needed to provide some explanation of the kinds of "impeding and unethical conduct" that prison officials had allegedly undertaken, once Defendants had provided documentation of non-exhaustion and facially legitimate reasons for rejecting Draper's administrative appeals.[Fn. Omitted.] Draper did not identify any actions that prison staff took that impeded his ability to exhaust his administrative remedies, nor did he otherwise explain why he failed to comply with the administrative process. Because Draper failed to rebut Defendants' evidence of non-exhaustion, the district court properly dismissed his procedural due process claim against Rogers.

*Draper*, 836 F.3d at 1080. Here too, Plaintiff has failed to identify any actions that Corcoran officials took that impeded his ability to exhaust his administrative remedies. He simply states his grievance was submitted in March or April 2016 and was never responded to. Yet there is no evidence of such a grievance. Plaintiff has not provided a copy of the 2016 grievance nor any evidence of follow up regarding that 2016 grievance prior to May 2018 when Plaintiff submitted CSPC-8-18-02892. Such conclusory and unsupported declarations and contentions are insufficient to meet Plaintiff's burden of production on summary judgment to show that prison officials rendered administrative remedies unavailable to him. *See F.T.C. v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997) (a conclusory affidavit, lacking detailed facts and supporting evidence, does not create a genuine issue of material fact on summary judgment); *Bridgewater v. Cate*, No. 2:10-cv-2971 TLN DAD P, 2015 WL 4506860, at *7 (July 24, 2015); *Jackson v. Baca*, No. CV12-10393-JLS JEM, 2018 WL 1916307, at *6 (C.D. Cal. Feb. 13, 2018), report and recommendation adopted, No. CV12-10393 JLS JEM, 2018 WL 1918497 (C.D. Cal. Apr. 18, 2018) ("Plaintiff's assertions that he gave a deputy an inmate complaint form and then never heard anything again are simply too vague and inconclusive to create a genuine issue regarding exhaustion or the availability of administrative remedies."); *Rodgers v. Reynaga*, No. CV 10-06-1083-JAT, 2009 WL 2985731, at *3 (E.D. Cal. Sept. 16, 2009), aff'd, 393 F. App'x

447 (9th Cir. 2010) ("To grant Plaintiff an exception to PLRA's demand for exhaustion based solely on Plaintiff's self-serving testimony that his grievance was surreptitiously destroyed by prison officials would completely undermine the rule."); *Hendon v. Baroya*, No. 1:05-CV-00838-OWW-SMS-PC, 2007 WL 3034263, at *3 (E.D. Cal. Oct. 16, 2007), report and recommendation adopted, No. 1:05-CV-00838-OWW-SMS-PC, 2008 WL 482868 (E.D. Cal. Feb. 20, 2008), aff'd 320 F. App'x 717 (9th Cir. 2009) ("The vague assertion that grievances were filed is insufficient to make the requisite showing that exhaustion either occurred or was excused due to some form conduct on the part of prison officials which prevented plaintiff from properly utilizing the appeals process").

To the extent Plaintiff has previously asserted his "paperwork, letters and important documents" were "discarded, and scattered on the tier" during a February 2018 search of his cell while he was incarcerated at the R.J. Donovan Correctional Facility (*see* Doc. 47-4 at 24), implying such documentation included a copy of a 2016 grievance, the Court is not persuaded. A review of the document entitled "RJ Donovan State Prison Cell Search Worksheet" dated February 7, 2018, indicates "excessive personal papers" were "discovered" in violation of that facility's rules and regulations, and further indicates "contraband items were confiscated," including "excess shower shoes" "trash" and "excess state linen." (Doc. 47-4 at 32.)  (*Id.*) In the "COMMENTS" section that follows the list of confiscated items, the following notation is made: "HOARDING OLD MAIL." (*Id.*)  The document does not indicate that Plaintiff's documentation was confiscated, only that excess shower shoes, trash and excess state linens were taken. There is no evidence to support Plaintiff's assertion that important documents were "discarded" or "scattered on the tier." Further, the Court notes Plaintiff did not submit a grievance following this February 2018 cell search to complain his legal documents had been confiscated or lost. (See Doc. 47-4, Moseley Decl., Exs. 1 [grievance history prior to 6/1/20] & 2 [grievance history on or after 6/1/20].)

In sum, the undersigned has reviewed Plaintiff's operative complaint and his opposition to Defendants' motion for summary judgment. Based on the evidence now presented, the Court concludes that Plaintiff has not submitted sufficient evidence on summary judgment to create a

1   genuine issue of material fact with respect to his claim that administrative remedies were

2   effectively unavailable to him because he submitted a grievance in March or April 2016 that was

3   never responded to. *Albino*, 747 F.3d at 1166, 1172. Therefore, Defendants' motion for summary

4   judgment should be granted.

### 2.   2018 Grievance & Appeal

6       Plaintiff submitted a grievance in 2018 that was cancelled as untimely for it referred to the

7   events in March and April 2016. As noted previously, Defendants contend the 2018 grievance

8   was lacking support for any cause of delay and Plaintiff failed to submit documentation

9   supporting an inability to file in a timely manner. (Doc. 47 at 10.) Further, Defendants contend

10  Plaintiff failed to properly exhaust his administrative remedies because he did not timely appeal

11  the cancellation of his original grievance. (*Id*. at 11.) Plaintiff was notified on August 6, 2018 that

12  his 2018 grievance had been screened at the first level of review and cancelled for a failure to

13  comply with regulatory requirements. (*Id*.) At the second level of review, the warden concluded

14  the grievance was properly cancelled as untimely and that Plaintiff had no valid reason to excuse

15  the delay. (*Id*.) More than three months later, on December 19, 2018, Plaintiff appealed to the

16  third level. (*Id.*) The Office of Appeals cancelled Plaintiff's third level appeal as untimely on

17  January 31, 2019 and a separate appeal from the cancellation decision was also unsuccessful. (*Id*.

18  at 11-12.) The undersigned finds Defendants have again met their burden to show that an

19  administrative remedy was available; therefore, the burden shifts to Plaintiff. *Albino*, 747 F.3d at

20  1166.

21      In their statement of undisputed materials facts, at number 13, Defendants contend

22  Plaintiff appealed his 2018 grievance (Appeal Log No. 1816776) to the third level of review on

23  December 19, 2018, over three months after the warden issued the second-level appeal response,

24  making it untimely. (*See* Doc. 47-4 [Moseley Decl. ¶ 9].) Significantly, Plaintiff did not dispute

25  this fact. (*See* Doc. 48 at 2 ["UF#13 ... Plaintiff agrees"].) Nor does he dispute the remaining facts

26  relevant to the appeal, to wit: that on January 31, 2019, the Office of Appeals cancelled Plaintiff's

27  third-level appeal as untimely; that on March 27, 2019, the Office of Appeals received another

28  appeal submitted by Plaintiff, Appeal Log No. 1902014, in which Plaintiff alleged that Appeal

1    Log No. 1816776 was inappropriately cancelled; and that on June 25, 2019, the Office of Appeals

2    issued a third-level response denying Plaintiff's appeal. (*See* Doc. 48 at 2 [ as to "UF#" 14-16,

3    "Plaintiff agrees"].)

4          It is undisputed that Plaintiff's third level appeal pertaining to his cancelled 2018

5    grievance was untimely. It is therefore unexhausted. The filing of an untimely grievance or appeal

6    is not proper exhaustion. *See Woodford*, 548 U.S. at 83-84. And Plaintiff has failed to meet his

7    burden of production to show his administrative remedies were effectively unavailable to him. In

8    fact, he makes no argument in the opposition related to the untimeliness of the appeal. *Albino*,

9    747 F.3d at 1166; *see Wilson v. Zubiate*, 718 Fed. Appx. 479, 482 (9th Cir. 2017) (quoting *Ross*,

10   578 U.S. at 643) ("Because an appeal of the cancellation decision left open the possibility for

11   some relief, the procedure did not operate as a 'dead end'").

12         **VI.    CONCLUSION AND RECOMMENDATIONS**

13         The undersigned finds: (1) Defendants have demonstrated administrative remedies were

14   available; (2) Plaintiff did not exhaust his remedies as to his claim against Defendants; and (3)

15   Plaintiff has failed "to come forward with evidence showing that there is something in his

16   particular case that made the existing and generally available administrative remedies effectively

17   unavailable to him." *Albino*, 747 F.3d at 1166. Based upon the facts and binding precedent, the

18   undersigned recommends that Defendants' motion for summary judgment be granted for

19   Plaintiff's failure to exhaust his administrative remedies.

20   //

21   //

22   //

23   //

24   //

25   //

26   //

27   //

28   //

These Findings and Recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. **Within 14 days** after being served with these Findings and Recommendations, Plaintiff may file written objections with the Court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991); *Wilkerson v. Wheeler*, 772 F.3d 834, 834 (9th Cir. 2014).

IT IS SO ORDERED.

Dated:   **September 15, 2022**                    **/s/ Gary S. Austin**
                                          UNITED STATES MAGISTRATE JUDGE